UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| STATE OF SOUTH DAKOTA,<br><br>Plaintiff,<br><br>vs.<br><br>HAROLD FRAZIER, individually and in his official capacity as chairman of the Cheyenne River Sioux Tribe, AND CHEYENNE RIVER SIOUX TRIBE,<br><br>Defendants. | 4:20-CV-03018-RAL<br><br>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND GRANTING PRELIMINARY INJUNCTION |
|---|---|

The State of South Dakota (the State) filed a lawsuit against the Cheyenne River Sioux Tribe (the Tribe) and the Tribe's Chairman Harold Frazier in both his individual and official capacity. Doc. 1. As a part of its suit, the State sought a preliminary injunction against the Tribe and Chairman Frazier. Doc. 1 at ¶ 41; Doc. 3. Defendants responded with a motion to dismiss based on a lack of subject matter jurisdiction and sovereign immunity. Doc. 21. Defendants also opposed entry of any preliminary injunction. Doc. 22. On October 20, 2020, this Court held a hearing on all pending issues. Doc. 33. After having read filings by both parties and hearing argument, this Court noted that both parties deserved a prompt ruling and gave its reasoning and ruling from the bench on the motion to dismiss and the motion for preliminary injunction. This is the written order formalizing the reasoning and ruling.

I.   **Factual Background**

Located within the Cheyenne River Sioux Indian Reservation is the community of La Plant, South Dakota. Doc. 23 at ¶ 11. The community consists of approximately 200 residents, most of

1

whom are Native Americans living in poverty. Doc. 23 at ¶ 11. Running through La Plant is U.S. Highway 212. Doc. 24 at ¶ 2. Because La Plant is in a very rural area, the speed limit on U.S. Highway 212 is 65 miles per hour (mph) for vehicles approaching La Plant. Doc. 5 at ¶ 4. A motorist approaching La Plant, prior to this dispute, would see a warning sign of an approaching decrease in the speed limit from 65 mph to 55 mph, and then would see a speed limit sign showing 55 mph for the area through La Plant. Doc. 5 at ¶¶ 4, 24; Doc. 5-3 at 3.

On August 14, 2020, the Tribe opened on the south side of U.S. Highway 212 the La Plant Thrifty Mart, a tribally owned and operated convenience store and gas station. Doc. 23 at ¶ 14. The La Plant Thrifty Mart provides a wide range of food stuffs and other essentials to the residents of La Plant as well as residents in the surrounding area. Doc. 23 at ¶ 14. Before its opening, there had never been such a store in La Plant, and the nearest grocery store was 30 to 40 miles away. Doc. 23 at ¶¶ 12, 15. After the store opened, many of the reservation residents came to rely on the store for necessities such as food, diapers, cleaning supplies, fuel, and other essentials. Doc. 23 at ¶ 16. As so many residents lack reliable transportation, see Doc. 23 at ¶ 13, residents often travel to the convenience store on foot or by bike, Doc. 23 at ¶ 18; Doc. 24 at ¶ 5. U.S. Highway 212 bisects La Plant, with its high school and some homes to the north of the highway and houses to the south of the highway and along the highway. Some of the La Plant residents must cross the highway to get to the store, while others walk along the south-side shoulder of the highway because there are no sidewalks. Doc. 23 at ¶ 18; Doc. 24 at ¶ 2. Particularly when the Tiospaye Topa School is open, the Tribe anticipates that children will frequent the store on their bikes or on foot. Doc. 24 ¶ 6. In addition to the increased pedestrian and bike traffic, tribal law enforcement has observed an increased number of vehicles in the area. Doc. 24 at ¶ 4.

The Cheyenne River Sioux Tribal Council anticipated that the opening of the La Plant Thrifty Mart would increase traffic risks in the La Plant community, specifically the threat to human life and bodily safety from increased pedestrian, bike, and vehicle traffic. Doc. 23 at ¶¶ 19–20. On July 14, 2020, the Tribal Council, by a vote of thirteen to zero, passed a resolution to lower the speed limit on U.S. Highway 212 at La Plant to 45 mph. Doc. 23 at ¶ 19. Shortly after the opening of the La Plant Thrifty Mart, Chairman Frazier instructed tribal road employees to replace the 55 mph speed limit signs with 45 mph speed limit signs. Doc. 23 at ¶ 22.

Unfortunately, the Tribe changed the speed limit unilaterally without notifying the State or to the federal authorities. Once the South Dakota Department of Transportation (SDDOT) learned of a temporary display erected by the Tribe to alert of a lowered speed limit, a SDDOT employee contacted tribal officials to advise them of the state-law process for changing the speed limit on a federal highway. Doc. 5 at ¶¶ 7, 19. Tribal officials then removed the State's signs setting the 55-mph speed limit, replaced those signs with ones posting a 45-mph speed limit, but left intact signs warning of an approaching 55 mph zone. Doc. 5 at ¶¶ 7, 24; Doc. 5-3. The SDDOT employee informed tribal officials that the speed limit signs would need to be restored to their original state until any possible speed limit change received official approval from the State. Doc. 5 at ¶ 11. When the Tribe did not change the speed limit signs from 45 mph to 55 mph, the SDDOT changed the signs back themselves. Doc. 5 at ¶ 15; Doc. 23 at ¶ 23. The Tribe responded in kind. Doc. 5 at ¶ 15, Doc. 23 at ¶ 24. Thereafter, there were several occasions in which the SDDOT or the Tribe unilaterally changed the speed limit signs to reflect each of their preferences.[1] Doc. 5 at ¶¶ 16, 18, 23–25; Doc. 24 at ¶¶ 23–24.

---

[1] The State and the Tribe at one point cooperated to swap back to one another signage each had removed, but that seems to have facilitated the continuance of the battle of the signage change. Doc. 5 at ¶ 16.

The State then filed this suit. Doc. 1. Since the State has filed this lawsuit, Chairman Frazier instructed tribal employees to lower the speed limit from 45 mph to 35 mph. Doc. 32 at ¶¶ 3–5. The explanation given at the hearing was that the Tribe's traffic engineer had studied the situation and recommended a 35-mph speed limit through La Plant. The State has deemed the Tribe's resolution to be a request for a lower speed limitation in the area and has set an administrative hearing for October 29, 2020, to hear testimony on what the speed limit through La Plant should be. Doc. 4-2.

## II. Discussion

### A. Motion to Dismiss

At the motion hearing, this Court first considered the Defendants' motion to dismiss, Doc. 21. Defendants argued that (1) this Court lacked subject matter jurisdiction over the suit and (2) sovereign immunity barred the suit against both the Tribe and Chairman Frazier. As to federal subject matter jurisdiction, this case presents a federal question under 28 U.S.C. § 1331. The claim involves a federal highway, Doc. 5 at ¶ 2, and federal law controls which party has the authority to determine the speed limit on a federal highway located within an Indian reservation, see 23 U.S.C. § 109(d). Because the State's Complaint raises a federal question, the Defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

At the hearing, this Court next considered whether sovereign immunity barred suit against the Defendants. As to the Tribe, this Court agreed with Defendants that sovereign immunity prevented suit. Kodiak Oil & Gas (USA) Inc. v. Burr, 932 F.3d 1125, 1131 (8th Cir. 2019) ("By virtue of their limited sovereignty, tribes possess (subject to congressional limitation or expansion) 'the common-law immunity from suit traditionally enjoyed by sovereign powers.'" (quoting

Michigan v. Bay Mills Indian Co., 572 U.S. 782, 788 (2014)). Thus, the Tribe's motion to dismiss the State's suit is granted on sovereign immunity grounds.

However, the claim against Chairman Frazier for injunctive relief is not barred by sovereign immunity, and Chairman Frazier may be sued in his official capacity to the extent that injunctive relief is sought. "[T]ribal immunity does not bar [] a suit for injunctive relief against *individuals*, including tribal officers, responsible for unlawful conduct." Kodiak Oil & Gas (USA) Inc., 932 F.3d at 1131 (quoting Bay Mills Indian Co., 572 U.S. at 796). The State seeks injunctive relief and has alleged that Chairman Frazier engaged in unlawful conduct in directing signage changes not permitted by federal law. Therefore, as to Chairman Frazier, the motion to dismiss is denied.

### B. Preliminary Injunction

This Court denied the State's request for a temporary restraining order, Doc. 7, but had reserved ruling on the State's motion for preliminary injunction. The State's motion for preliminary injunction, Doc. 3, seeks to enjoin the Tribe or Chairman Frazier from modifying, removing, or replacing any of the speed limit signage on any highway within the jurisdiction of the SDDOT. Doc. 1 at ¶ 41; Doc. 3.

Rule 65(a) of the Federal Rules of Civil Procedure governs entry of a preliminary injunction. In determining whether to grant a preliminary injunction, this Court considers the factors set forth in Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc): "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Although no single factor is determinative, the Eighth Circuit has emphasized that "the probability of success factor

is the most significant." MPAY Inc. v. Erie Custom Comput. Applications, Inc., 970 F.3d 1010, 1015 (8th Cir. 2020) (cleaned up and citation omitted). The movant bears the burden of proving these factors. CDI Energy Serv. v. West River Pumps, Inc., 567 F.3d 398, 402 (8th Cir. 2009) (cleaned up and citation omitted).

Because the State's likelihood of success on the merits is the "most significant" factor, this Court during the hearing began its analysis there. Congress, through 23 U.S.C. § 109(d), has given states the authority to determine the "location, form, and character of . . . regulatory and warning signs" on federal highways. Specifically, Section 109(d) provides as follows:

> On any highway project in which Federal funds hereafter participate, or on any such project constructed since December 20, 1944, the location, form and character of informational, regulatory and warning signs, curb and pavement or other markings, and traffic signals installed or placed by any public authority or other agency, shall be subject to the approval of the State transportation department with the concurrence of the Secretary, who is directed to concur only in such installations as will promote the safe and efficient utilization of the highways.

23 U.S.C. § 109(d). Nothing within this statute creates an exception to the state's power to approve "the location, form, and character of . . . regulatory and warning signs" on federal highways located within Indian reservations. Instead of pointing to any federal law to the contrary, Defendants point to the Tribe's traffic code and the inherent sovereign power of the Tribe on its reservation. However, Congress has authorized the Secretary of Interior to grant easements over land within Indian reservations so that states can open and establish public highways. See 25 U.S.C. § 311. In this case, the federal government, as trustee for the Tribe, has granted the SDDOT the necessary easements for the construction of U.S. Highway 212 through La Plant, South Dakota. See Doc. 3-1.[2]

---

[2] Doc. 3-1 contains the easements, deeds, and title work. Both the Tribe (through the federal government) and private individuals appear to have granted easements for the highway

In <u>Strate v. A-1 Contractors</u>, the Supreme Court of the United States declared that when the federal government grants the state a right-of-way over Indian reservation land for the construction of a public highway, such land is equivalent to "alienated, non-Indian land." 520 U.S. 438, 454 (1997). Several facts formed the basis of the Supreme Court's conclusion in <u>Strate</u>. The Supreme Court noted that the right-of-way was "open to the public, and traffic on it is subject to the State's control." <u>Id.</u> at 455–56. It also emphasized that the tribe consented to the easement, was compensated for the easement, and retained no gatekeeping right as to that portion of the highway. <u>Id.</u> at 456. Therefore, the tribes could not "assert a landowner's right to occupy and exclude." <u>Id.</u> In turn, the Supreme Court in <u>South Dakota v. Bourland</u> stated that when a tribe loses its right to absolute and exclusive use and occupation of conveyed lands, by extension, it loses regulatory jurisdiction over the use of the land by others. 508 U.S. 679, 689 (1993).[3]

Here, the Tribe as well as individual landowners in the area consented to and were compensated for the necessary easements granted to the State to construct U.S. Highway 212 through La Plant. The Tribe did not reserve any right to regulate the land subject to the right-of-

---

construction. The stretch of highway through La Plant appears to have been built or rebuilt in the late 1980s.

[3] While <u>Strate</u> and <u>Bourland</u> establish that when an Indian tribe conveys land to non-Indians, the tribe loses absolute and exclusive occupation and use of the land and, by extension, the power to regulate, that is not always the case if one of the two <u>Montana</u> exceptions applies. See <u>Montana v. United States</u>, 450 U.S. 544 (1981). Under <u>Montana</u>, a tribe "may regulate . . . the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." <u>Id.</u> at 565. Also, under <u>Montana</u>, a tribe retains "inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." <u>Id.</u> at 566. The first <u>Montana</u> exception does not apply as the Tribe retained no contractual right to regulate U.S. Highway 212, and federal law grants no such right. Nor did nonmembers enter into a consensual relationship with the Tribe merely by travelling on U.S. Highway 212. Although the "health or welfare of the tribe" is implicated by speed limits through tribal communities, the second <u>Montana</u> exception does not apply because a speeding violation on U.S. Highway 212 would be a criminal offense, not subject to an "exercise [of] civil authority." <u>Id.</u> at 566.

way. See Doc. 3-1. The highway is open to the public, and the State is responsible for maintaining the roadway. Thus, under Strate, the land is akin to "alienated non-Indian land." 520 U.S. at 454. Further, Congress has given the state transportation department the power of final approval of signage on federal highways. Therefore, the State's likelihood of success on the merits here is high. See D.M. by Bao Xiong v. Minn. State High Sch. League, 917 F.3d 994, 999 (8th Cir. 2019) (providing that the district court need only determine whether the movant has a "fair chance of prevailing," and that this standard does not require the party seeking relief to "show a greater than fifty per cent likelihood that he will prevail on the merits" (cleaned up and citation omitted)). Therefore, the "most significant" Dataphase factor weighs in favor of granting a preliminary injunction.

At the hearing, this Court next addressed whether there was a threat of irreparable harm to the State. The State argued that it will suffer irreparable harm for several reasons. First, it pointed out that it is obligated under federal law to conduct an engineering study before reducing the speed limit below the existing 55 mph limit on that portion of the highway. See Doc. 28. The State asserted that the failure to fulfill this obligation could result in the loss of federal funds. See 23 U.S.C. § 116(d) (authorizing the Secretary of Transportation to withhold approval of further projects if it finds that a state is failing to properly maintain[4] a federal highway). The State also argued that letting the Tribe set the speed limit at the present 35 mph is potentially dangerous. For traffic approaching La Plant, the speed limit on U.S. Highway 212 is 65 mph, and the speed limit historically has been 55 mph on that portion of the highway running through La Plant itself. However, the Tribe has reduced the speed limit from 55 mph to 35 mph in an effort to protect its

---

[4] Under 23 U.S.C. § 101(13), the term "maintenance" is defined as "the preservation of the entire highway, including surface, shoulders, roadsides, structures, and such traffic-control devices as are necessary for safe and efficient utilization of the highway."

8

community members in La Plant. The State is concerned that such a dramatic reduction in speed will lead to more accidents. Doc. 28. For example, collisions could occur between a vehicle whose driver abides by the Tribe's speed limit and a trailing vehicle whose driver continues at between 55 mph and 65 mph. The State submits that its brief study suggests that drivers were disregarding the Tribe's posted 45 mph limit. See Doc. 30. The State's other concern is that winter conditions may prevent drivers from reducing their speed from 65 mph to 35 mph so quickly, and the attempt itself could be dangerous. Although the State is likely overstating whether its federal highway funds are in true jeopardy, the State has articulated a genuine threat of irreparable harm absent a preliminary injunction.

The next Dataphase factor requires balancing harm to the State against "the injury that granting the injunction will inflict on other parties litigant." Dataphase Sys. Inc., 640 F.2d at 114. Chairman Frazier is the remaining other party, but realistically this Court must consider the interests of the Tribe and its members here, as the Tribal Chairman is sued in his official capacity. The Tribe and its members have valid concerns here too.[5] Since the opening of a convenience store in La Plant, the Tribe has observed increased pedestrian traffic. The Tribe worries, and rightfully so, that vehicles travelling 55 mph through La Plant will fail to appreciate that pedestrians and bicyclists cross U.S. Highway 212 or walk along its shoulder to access the new convenience store. Indeed, tribal law enforcement has observed "near misses" on the roadway. Doc. 24 at ¶ 4. The

---

[5] This Court understands that entry of a preliminary injunction inflicts harm to the Defendants by overriding a Tribal Council resolution and nullifying actions taken by Chairman Frazier on the advice of the tribal traffic engineer designed to protect or reduce risk of harm to tribal members living in the La Plant community. Entry of an injunction is somewhat of an insult to the Tribe's sovereignty. But, as discussed in considering success on the merits, this results from Congressional enactment of 23 U.S.C. § 109(d) and 25 U.S.C. § 311, as well as Supreme Court cases like Strate and Bourland. By no means does this Court intend insult to the Tribe's sovereignty, and this decision is limited to the unique facts here involving the posted speed limit through La Plant on U.S. Highway 212.

Tribe and Chairman Frazier are in a unique position to discern the community's safety needs and respond accordingly. Yet this harm may be short lived. The State has started the process to reevaluate the speed limit on U.S. Highway 212 as it bisects La Plant in front of the new Thrifty Mart. The State's representations at the hearing were that it would not ignore tribal concerns and simply refuse to change the speed at all. True, the entire State process will take roughly through November 30, but that should allow determination in a rational manner of such things as where to place signs warning of decrease of speed ahead and whether flashing lights on such signs are in order. Thus, there is a risk of injury to the Tribe and its member if this Court grants a preliminary injunction, because pedestrians crossing a highway where vehicles drive 55 mph is dangerous.

The final <u>Dataphase</u> factor is whether the public interest is served by granting a preliminary injunction. Before the hearing, the State and the Tribe had gone back-and-forth, taking each other's signs down and replacing them with their own. The public is certainly not served by a system where the speed limit is subject to frequent change and determined by whichever sovereign entity last changed out the sign. The grant of this preliminary injunction allows the state process for an orderly change of signage to take place. The State has an obligation under the federal statute giving it authority over regulatory highway signage to act to "promote the safe and efficient utilization of the highways." 23 U.S.C. 109(d). That statutory language connotes considering the safety of motorists and non-motorists alike. At the hearing, the State vowed to consider reducing the speed limit below 55 mph on that portion of the highway running through La Plant. It also informed the Court that this matter could be resolved as soon as November 30, 2020.[6] The public will be best

---

[6] An administrative hearing before the South Dakota Transportation Commission is scheduled for October 29, 2020. At the hearing, the State advised that it would welcome the Tribe to submit comments at or before the October 29 hearing and testify at the hearing either in person or by telephone. It also explained that after the hearing, the Rules Committee will make a decision by November 10, and their decision would go into effect 20 days later.

served by a process where the State determines, with the Tribe's input, a speed limit that protects both drivers and pedestrians alike in the area. Based on the assurances from the State of a fair process[7], this Court determines that the public interest is served by granting the injunction. Thus, the final Dataphase factors weighs in favor of granting a preliminary injunction assuming the State's process is fair.

In short, this Court grants the preliminary injunction, principally because of the State's likelihood of success on the merits and because an orderly process to entertain and determine a reduction of the speed limit serves the public interest. The scope of the preliminary injunction extends to prohibit Chairman Frazier from directing any tribal agency or employee thereof from altering any signage that the State has posted on U.S. Highway 212 in or near La Plant or replacing such state signage with any new signage, whether temporary or permanent, without the prior permission of the appropriate state authority. However, this injunction in no way prohibits or is meant to deter Chairman Frazier or tribal agencies from petitioning the State for additional signage on Highway 212 alerting motorists to an area of pedestrian crossing at La Plant or presenting the State with its evidence to support lowering the speed limit in the area of the new La Plant Thrifty Mart. Indeed, this Court strongly encourages the Tribe's participation in the process moving forward and trusts that the State will be receptive to and respectful of that submission. Moreover, this injunction is by definition preliminary. If there is a material change

---

[7] In reply briefing, Doc. 26, the State seemed to argue that, because its brief study suggested that motorists were ignoring the 45-mph speed limit, no lowered speed limit was required and that motorists' behavior should dictate what speed limits are. The State assured this Court that such inferences from the State's briefing should be attributed to her writing and did not reflect the State's actual position. Truly, any such argument focuses only on one perspective—the motorist passing through La Plant looking to get to another destination—and not safety to pedestrians, bicyclists, store patrons, or the community, particularly where circumstances here changed by the opening of a new store on U.S. Highway 212 for a community whose housing is bisected by the highway.

in circumstance, this Court will entertain a motion to modify or extinguish the preliminary injunction.

### III.  Conclusion

For the reasons explained on the record as well as the reasons contained herein, it is

ORDERED that Defendants' motion to dismiss, Doc. 21, is granted to the extent the Plaintiff's claims against the Cheyenne River Sioux Tribe are barred by sovereign immunity; otherwise it is denied. It is further

ORDERED that Plaintiff's motion for preliminary injunction, Doc. 3, is granted to the extent that Chairman Frazier is enjoined from directing any tribal agency or employee thereof from altering any signage that the State has posted on U.S. Highway 212 in or near La Plant or replacing such signage with any new signage, whether temporary or permanent, without the prior permission of the appropriate state authority.

DATED this 23rd day of October, 2020.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE